Okay, the next argued case that reached us on motions is number 172130, Waymo LLC against Uber Technologies. Mr. Hume. Good morning, Your Honors. David Hume, publisher of Uber and Automoto. Your Honors, I don't think there's any dispute or any basis for dispute. But for Waymo to prevail on a straight-C business appropriation plan against Uber, it has to prove conduct that constitutes a violation of the obligations under Mr. Lewandowski's employment agreements. They say that their conduct also violates other things, but it has to violate the agreements. Haven't they agreed that they're not going to rely on the agreement? They have said they're not going to. Of course, they then put the agreements, referenced them in our interrogatory responses, which is in our motion to supplement. But yes. But not the Lewandowski agreement by name, just generically. Correct. My point, Your Honor, is if you look at the agreements, they explicitly govern the subject matter at issue here. Why does that make you a party to the agreement? If you are deemed at least an equitable party, then how can you come under the agreement provisions? We don't claim to be a party, and we don't need to be a party. Under the California Doctrine of Equitable Estoppel, we are entitled to raise the arbitration agreement. And they are stopped from arguing that we aren't a party. You know, that's an interesting question. I went to law school in California many, many years ago, and I seem to remember some maxims which I didn't find discussed here. Ones like, he who seeks equity must do equity, and one may not come to equity with unclean hands. Neither side seems to have discussed that, but it seems to me that given the allegations that are made here, that may have a major impact on the determination of this case. That is still California law, is it not? It may be California law in general, equity, Judge Wallach, it hasn't been. That doctrine has never been invoked in any of the arbitration equitable estoppel cases that have arisen since the 11th Circuit started deciding them in the 1990s, and then they were adopted in the metal-clad case, which was the first California case to hold that a party who's not a party to the contract may invoke the doctrine and may invoke the arbitration clause to compel arbitration. And there they were accused of egregious fraud, a conspiracy to commit fraud. And if the doctrine of unclean hands prevented a defendant who's not a signatory to an arbitration agreement from raising it, it would have prevented the defendants in metal-clad, and it would have prevented the defendants, Your Honor, in two cases that are virtually identical to this. The Torbett case, decided by Judge Davila, and they were in a different- Identical? That's substantially different on its facts. You say virtually identical, and it didn't go your way, as I recall. It did go our way, Your Honor. Torbett and the Cardionet case, which was a District of Massachusetts decision applying California law, both addressed the following fact pattern. An employee works for one company, is alleged to take trade secrets, in one case by downloading files, maybe in both cases, leaves, sets up his own company with other people, and then the first company sues the new company. And the company that's created, and that's what happened here, Anthony Lewandowski set up a company called Automoto. They are a defendant in this case. He is alleged to have downloaded trade secrets, taken it, and used it in his new company that he co-founded with other companies. Neither party seems to dispute the District Court's fact findings. I'm not sure which fact findings you're referring to, Your Honor. One finding- Well, any of them. Do you dispute any of the District Court's factual findings, or any specific statements in Waymo's summary of factual relevance? Your Honor, I don't believe the District Court made factual findings in this decision. It made a legal decision based on the allegations in the complaint, and we believe erroneously on this representation in court- You're right. There is not a separate findings of fact and conclusions of law, but there are statements of fact by the court. Do you disagree with any of them? Your Honor, we didn't view the decision as setting forth findings of fact. It made a legal decision based upon the complaint and the representation in court that the judge solicited that they won't rely on the contract- Are you going to answer my question? I don't think we're appealing a finding of fact. We're appealing a legal decision. Do you disagree with any of the statements of fact in Waymo's statement of facts? Your Honor, I can't stand here and say I agree with every single thing they said in their factual summary. I didn't ask you to. I said, do you disagree with any of them? I can't say whether I do or not. I don't know. I'm not going to be discussing it while you have the question on. I can address it. There is a body of California law with respect to the strength of the agreement to arbitrate. That's easy. That's not additional. The question is whether, in fact, there is an equitable exception. And the assorted facts in the California cases, which have ended up deciding that there is not an equitable exception for various parties and so on, all on quite different facts, but on facts in which the equities seem to be as strong as the equities here because, and I think this is really the point that Judge Wallach and all of us have been thinking about, there's no representation of disadvantage, as far as I can tell, in the district court as to making your case. It's solely that we ought to be entitled to tag along somehow on the separate contract between the employee and the ex-employer. And that's the difficulty that needs to be overcome. On the principles of equity, that it's unfair and that you wouldn't get a fair consideration because there are issues that couldn't be explored and so on. I haven't seen any of that. Whatever it is that Waymo may have said they are or aren't going to rely on in the district court, I don't think is relevant to whether, in fact, equity entitles you to move out of the ordinary standard judicial approach. Yes, Your Honor, let me try to address that. Yes. In none of the cases that compel arbitration on this doctrine, both in California and elsewhere, in none of them did they look at unfairness to the non-signatory defendant, to the defendant who is in the position of Uber. I grant you that the name of the doctrine of equitable softball leads you to wonder, where's the unfairness to the non-signatory defendant? But they never talk about that. And I think there's at least one case I can give you. I'll have to check it for rebuttal. That says that that's not the test. But none of them ever talk about it. What they talk about is that it is unfair for the signatory plaintiff to try to have it both ways. How do they have it both ways here? Because what you're talking about is the policy of relying on a contract in order to prove that someone did you wrong, while at the same time avoiding the arbitration clause in the contract. Exactly. But I don't see anybody relying on the contracts here. So let me try to explain why we think they are. Nothing says they have to explicitly rely. They are implicitly relying on the contract 100%, Judge Hall, 100%. You cannot have a trade secret misappropriation claim of any kind. If the employee was permitted to do what he did, I will refer you to the court. So they live on the common law doctrine of loyalty. I mean, if they lose based on that common law doctrine of loyalty in district court, then that ends that. But if they're saying we're not going to rely on the Lewandowski agreement to show his obligation, then what are you making? Not only that, they have a conversion argument. They have a ton of arguments in California. Your Honor, please urge the court, implore the court, to read paragraph 3A of the contract. This is a prodigious inventor who had his own businesses. He had businesses before he went to Google. He had businesses while he was at Google. That's why he's got two agreements. They had paragraph 3A called inventions not assigned. Explain to me why the obligation to arbitrate between Lewandowski and his ex-employer entitles now the successor to whatever it is that to move out, to avoid judicial process, and to move into that arbitration which doesn't include any alleged transgressions of your client or anything else. It relates to the arbitration. It's the relationship between the employer and the ex-employee. Because in every case, and I can cite five to the court, in every single case where the plaintiff's claim against the defendant requires the plaintiff to prove conduct that would violate the obligations of a contract with an arbitration clause, arbitration is compelled, whether it's explicit or implicit. It doesn't eliminate that evidence, that situation, from the presentation to the district court at trial. If it did, that, I think, might be a different picture. Is there a conspiracy count in that complaint? No, not as such, but they clearly alleged conservative misconduct. I really want to try to finish explaining why the contract is inescapably relied on here. The contract addresses- Between those two? Yes. Between the parties to the contract? Yes. Yes, Your Honor. There's no quibble about that? No, there is not. There's no quibble. Waymo is bound to the contract to Mr. Lewandowski. Uber is not a party. Automoto is not a party. There's no dispute about that. But there's also no dispute that those are the same facts in the following five cases, which I urge the court to look at. Corbett, CardioNet, both trade secret misappropriation cases by former employees who created companies who were not parties to the contract. The companies were able to compel- But, of course, Corbett involved- the court there found that the contract with the arbitration clause was, in fact, an issue in the case that was in district court. Yes, so let me just rattle off the cases. The other ones are Uptown Drug, where they don't reference the contract. They try to be cute about it. Please look at page 1185, where the court says you're making implicit references to the contract. But they said that you were- that didn't go your way, however. Yes, it did. Uptown Drug. They compel arbitration in every one of the cases. There was a general statement about equitable estoppel. Yes. In that case. They compel arbitration in Corbett and in CardioNet trade secret cases with employees. Uptown Drug, a trade secret misappropriation case involving commercial relationship between a retail pharmacy and CVS. They tried to avoid the contract. They didn't talk about the contract. The court says on page 1184, you can't get around the fact that you gave trade secret information to a person pursuant to a contract. You're complaining that that person gave it to six other people, and that that's a breach. And you're trying not to talk about the contract. And they said two things that are applicable here. On page 1184, they said that contract expressly governs whether the person you gave the trade secrets to was entitled to give it to someone else or not. It governs that. I don't know what it says, good or bad. It doesn't matter if it's good or bad. That's a merits question. But it governs the subject matter. It governs the subject matter. And then they said on page 1185, you don't get out of it by not explicitly referencing the complaint. You are implicitly referencing the complaint. But they here have said expressly, they are not going to rely on that. Your Honor, if they would stipulate that the contract permits what Lewandowski did, and they're going to rely on common law and trade secret law, we'll go forward. They can't. Because if the contract tells you— Now you're asking them to— But that's the point. That's the point. That's a frivolous argument. Your Honor, let me try to explain it better. Let me try to explain it better. In order to know whether Mr. Lewandowski breached a common law duty or breached a statutory trade secret law, you have to look at whether or not the contract prohibited him from doing this. Because it governs which inventions he owned and which inventions Google owned. He had inventions. Appendix 334 lists out inventions in the contract that he owned and that he did not assign to Google. So you have to look at the contract. It governs it. It says what his confidentiality obligations are. It says whether he has to return files— Let me ask you a fact question. Do you agree he downloaded those 14,000-something documents? Your Honor, to be honest with you, no one knows what really happened. So he hasn't denied it. We don't have 100 percent confidence, but we fully understand what exactly happened. With the downloading, when exactly he downloaded it, whether he took it when he downloaded it. Okay, let's hear from the other side. We genuinely do not understand. There's also a huge dispute of whether if he did it, why he did it. And we have presented evidence of him saying that he did use some downloads and that the reason he did it was so he would have information to protect his ability to negotiate back with Google over whether or not he was entitled to the full bonus that he was hoping for, some of which was paid in August. Now, if he did that, that may have been a misconduct by him. Maybe very serious, but nothing that has anything to do with the trade secrets coming to Uber. My point is not that the merits of the contract— If I were arguing that, maybe it would be frivolous. What I am saying is the contract governs the subject matter. And in order to determine whether a person has violated trade secrets and taken trade secrets they weren't supposed to, if there's a written contract, if the employer chose to have a written contract that explicitly governs that subject matter, you have to look at that to determine whether or not they did anything wrong. Now, is that arbitration proceeding or is it awaiting the resolution of these motions? The litigation over trade secrets is proceeding. Not the litigation. We know that's proceeding. Is the arbitration proceeding? The arbitration is proceeding. I believe there's a schedule for a hearing in April. It's proceeding relatively expeditiously. They've reserved their right to add the trade secret claims. We've said we'll go as fast as they want if we are sent to arbitration. And the district court litigation, that's moving at a quicker pace, right? Yes, it is set for trial in October. Okay, let's hear from the other side, but we'll save you rebuttal time. Thank you. Mr. Rehovot. Good morning, Your Honors. May it please the Court. Uber is bringing this appeal to enforce a contract it didn't sign. Waymo didn't agree with Uber, its competitor, that would arbitrate claims. As Your Honors have noted, the rule, the general rule, is if you didn't sign or agree to an arbitration provision, it's not applicable to you. You're entitled to use the federal courts. Well, there have been, there's been discussion, hasn't gone heavily in their favor of equitable principles, as in any case, where you transcend the general rule and try and figure out what's the right thing to do. That's correct, Your Honor. And while you're discussing equity, answer my question. Why didn't you argue on clean hands or that he who does equity must? A couple of reasons, Your Honor. We didn't expressly argue on clean hands. We don't have it as a cause, as expressly in the complaint. The facts would support that, but we have a certain trade secret with appropriations, our client. No, I mean in response to their equitable argument, because they're making an argument in equity. Yes. And a response to an argument in equity is you can't make it, because you have unclean hands. That's true, Your Honor. But our primary position is that the exception that Judge Newman was referring to is not a general equitable... I don't mean the three-part test. It's not, yeah, it's not a general equitable doctrine. It's not who's more equitable. It is very specific and very limited, because the right to the federal court system is really important. And if you didn't agree to waive that right, then you can't be compelled under the provisions of the... You're missing my point, counsel. I'm sorry. Which is it's not a who's more equitable. It's that unclean hands is a complete bar to equitable relief. So that if they're seeking equitable relief, that is to say equity permits us to assert this arbitration, it is a complete bar under California law, as I recall it from 40 years ago, if they have unclean hands. You're absolutely right, Your Honor. And the facts would totally support that in this case. By the way... Then why didn't you argue it? We were focused on the limited equitable, solvable doctrine. Perhaps we should have, Your Honor. The facts certainly would support it. By the way, as to the question about downloads, they have admitted it. The former CEO of their company has testified... What company are you talking about? Uber. Okay. Travis Kalanick has testified at that position that I took that he was told by Lewandowski that he did download files. And so that's not... To say we don't know at this point is not... It is not disputed, but recent testimony has shown that there was inequitable conduct here. But going to the limited exception of equitable estoppel, it is very limited. And basically it says if you rely... If Wavo was to rely on the Lewandowski employment agreement, maybe, for example, to say, the agreement says you can't take our confidential information and therefore there's a breach of contract, then they'd have an argument that in this equitable estoppel that the arbitration clause would then apply. But we are not making that argument. Our claims are for trade secret disappropriation and they're against a different party. They're against Uber. And we're alleging that Uber has misappropriated our trade secrets. The fact that the source of those trade secrets is a former employee is not pertinent to the doctrine of equitable estoppel. The whole equity in this limited exception is that it would be inequitable for a party to rely on a contract provisions in its favor. It's a non-signatory. But to be able to avoid the arbitration provision in that contract, here there's no question that we're not relying. They're not trying to avoid the arbitration between Wavo and Lewandowski. That's correct. They're saying that they should be part of that and that should be how these disputes are resolved by that arbitrator. Well, if that's their argument, it's contrary to law. The law is if you're non-signatory, you can't be compelled to an arbitration agreement you didn't sign. And they don't challenge that. They accept that's the law. And the limited exception, all they point to, the only thing they point to is this limited exception for equitable estoppel. And that is the doctrine under which if you rely on a contract that contains an arbitration clause, you might have an argument that equity requires you to be able to or you'd be bound by the arbitration. Now, they argue here that you are relying on the contract. But we're not. If you look at it, you can read the complaint yourself. I mean, there's no breach of contract claim. We're not. We never mentioned Lewandowski. Well, what they're saying is if you hadn't had that contract, you never would have been an employee. Well, that's not relevant to anything on the equitable. That is their argument. It's hard to tell what their argument is. Earlier, they relied on the opening brief. They relied on the complaint. And then we pointed out the complaint doesn't say anything about that contract. And then in their reply, they didn't re-argue that at all. Instead, they said they mischaracterized our argument and said that we were making an argument that you must expressly rely, and that's not the law. We never argued that. Well, let me ask you. One of the things they say is that you can't rely just on the common law doctrine. You're not going to be able to prove your case with just common law. You're going to have to rely on those appointment agreements. How do you respond to that? That's contrary to law as well. As your honors know, the Federal Arbitration Act is not applicable to a non-exhibitory. You have to go to state law and look at the relevant contract and related doctrines under California law in this case. And California has clearly held in the, I think it was called, Wayne Key case that the duty of loyalty is separate aside from a contract. And the only way it doesn't apply is if the contract specifically and expressly addresses the duty of loyalty and says it doesn't apply. If the contract doesn't mention it under California law, that means the duty is still there. And as Judge Wallach said, the trade secret statutes just requires that you've got the trade secrets through improper means. So beyond the duty of loyalty, it could be conversion. It could be misrepresentation. These are examples in the case law of obtaining trade secrets by improper means. It could be civil conspiracy. A lot of different things. We pointed to the duty of loyalty because it's the most obvious thing. But I hope that answers your question. It does. It does. And just quickly, your adversary was talking about the Uptown case quite a bit during the argument. How would you distinguish that case? Was that a case where there was reliance on the contract? In the Uptown case, the complaint was against both – well, let me back up. The Uptown case involved a pharmacy group and a parent company, Caremark Rx. They merged together. And the arbitration clause – the contract with the arbitration clause was between Uptown Drug and one of those two defendants, Caremark Rx. So one of the defendants was a signatory. First of all, Uptown Drug and Caremark Rx were signatories to the contract that had the arbitration clause. That's not this case. Moreover, the supposed non-signatory had merged with the signatory. And they had contractual relationships between the two that would require, in order for the retail pharmacy to have obligations to bring in Caremark Rx. So necessarily – well, first, number one, one of the defendants was a signatory. Number two, in order to get the other defendant to be liable, they would have to invoke the contract that contained the arbitration clause. So it's a completely different set of facts than in our case. I could address some of the other cases if your honors would like. I mean, the Torbett case could be addressed. Is it even good law? The Torbett case did not invoke the correct standard or the current standard under Goldman for equitable estoppel. It didn't even mention California law. It didn't mention Goldman. It didn't mention Murphy. It didn't mention the federal court cases applying California law. It's completely irrelevant. Non-precedential citation that doesn't apply the right standard. Metalclad, which they rely on, is a case where the plaintiff sued a parent company, Ventana, and the arbitration agreement was with Geologic, which was a subsidiary of the parent company. And the claim, so plaintiff sued Geologic, or the arbitration agreement was to plaintiff and Geologic, and Ventana was the parent. And the claim against Ventana was that it caused Geologic to breach the arbitration contract. So even to state the claim requires the invocation of the arbitration contract. So that's a completely different set of facts than in this case. And it's apparent from the very claim that an element to prove their case was breached of the contract. So these cases that are being relied on are clearly factually distinguishable, and notably, the cases that are precedential and that apply here, you don't hear any discussion of by the appellant. The Goldman case is the California case that sets forth the standard. If you read that case, it clearly shows that our facts don't apply. And then this standard is followed in the federal court by the Kramer case and the Murphy case. And both of those cases also, their analysis makes clear that in our situation, equitable estoppel does not apply. Well, they don't deal with your situation. Not exactly. In the situations in those cases, I agree, equitable estoppel did not apply. But they recognized that there is such a concept and that the court looks at the equities in order to decide. Yes, Your Honor. And that's what they're telling us, that the equities are such that no matter what, this relationship is going to have to be brought out, if you stay in the district court, and all of the other aspects, which do depend on the employment agreement. Therefore, this is the conclusion we're asked to reach. Therefore, let's put it all together before the arbitrator. Well, that's what they're arguing, absolutely. But those cases say, in order to succeed in that argument, you have to rely, the non-signatory has to rely on the arbitration agreement. Or in our case, the signatory who's suing the non-signatory has to rely on the arbitration agreement. And that simply doesn't happen in this case. Otherwise, it wouldn't be equitable? Yes. Well, the inequity would be if we relied on it and then said the arbitration clause doesn't apply. That's what the doctrine says. It would be unfair for a non-signatory to rely on it. Either way, the signatory to the arbitration agreement who's suing the non-signatory, if the signatory relies on it, then the signatory might be bound by the arbitration clause, in fairness. In this case, that simply doesn't apply. We are not relying on the employment agreement with Mr. Lebedowsky. Therefore, the equitable estoppel doctrine is inapplicable under the standards that Forth and Goldman and Kramer and Murphy. Uber, if you read their briefs carefully, they're conflating. There's two things that I'd like to mention real quickly. One is they're conflating a similarity of facts. So they say the facts that we're asserting would also establish breach of contract if we had sued Lebedowsky and if we had asserted breach of contract. But that's not the standard. The standard, if you look at Goldman, is are we relying on arbitration agreement? That's the legal standard, but they're saying the equitable standard is that these facts, they overlap, they all come out, and therefore, we should arbitrate. But that is a misstatement of the equitable doctrine. The equitable doctrine only comes into place if the claim you're asserting requires you to look at the obligations in the arbitration contract. And in this case, that's simply not the case. Whether you state it as reliance or inextricably intertwined or any of the formulations of this equitable doctrine, our claims stand alone without any reference to this particular arbitration contract. And therefore, just pointing to facts being interrelated is asking the court to look in the wrong direction. Can I ask you a standard of review question? Let's just assume for a minute that this was just a straight-up appeal, okay? And that there was a final judgment. Let's just assume that for a minute. This is an equitable doctrine. Now, there's an argument, I think, in the blue brief that the standard of review would be de novo, but because this is an equitable doctrine, is it de novo or is there some other standard that would apply? That would be a different standard. Off the top of my head. I don't think you disputed it in your brief, but I was just curious because it's an equitable doctrine. It seems like maybe some deference should be given. Yes, I agree. I agree with that. Off the top of my head.  He's trying to write you a note. He agrees with me. Okay. Thank you, Mr. Thaler. Thank you. Okay, then let's have three minutes for rebuttal. Your Honor, quickly on the standard of review. It wasn't disputed. And I think in other courts of appeals, it all but won that by de novo. And the metal clamp case, which was a state case, admittedly, but on page 17, 16, 15 to 16, discusses standard of review in both federal and state cases on this very doctrine and says it should be de novo. Your Honor, I'd like to try to simplify the argument and just briefly respond. Mr. Verhoeven said that the source of the misappropriation from Mr. Lewandowski is irrelevant. That's totally false. Under the misappropriation statute, the definition of misappropriation, which is found in both the Defense of Trade Secrets Act and the California Act, they have to show that Uber acquired trade secrets with knowledge that the person they acquired them from used improper means. You're not arguing that you can't get a full day in court, in the district court, on these issues. Is that right? It's entirely whether Uber, as for the reasons you're telling us, is entitled to participate in the arbitration or in the interest of justice, that that's how it should be resolved? That's correct. They have to show that Uber acquired and Automoto acquired the trade secrets with knowledge that they came through improper means. The improper means here are obviously the actions of Mr. Lewandowski, so the source is highly relevant. Mr. Verhoeven admitted that they are not arguing that reliance or the intertwined standard has to be explicit reliance. That's very helpful. Because our argument is principally that they are implicitly and inescapably relying on the contract. And I'd like to try one more time to explain why. Number one, the contract clearly governs the subject matter of who owned what and what Mr. Lewandowski's obligations were. The title of the contract is At-Will Employment, Confidential Information, Invention, Assignment, and Arbitration Agreement. The title of the contract includes reference to confidential information and invention assignment. And paragraph three deals with which inventions are assigned and which are not. Appendix 315-25, 327-337 are the two contracts. I asked the court to look at them to recognize that they govern the subject matter of Mr. Lewandowski's ability to use trade secrets, take trade secrets, what he owned, what he did not own. Second, in light of that, given that the contract governed the subject matter, if the contract permitted Mr. Lewandowski to do anything he's alleged to have done, any part of it, it would directly impact their ability to win their case. So the contract governs the subject matter. If the contract permitted him to do anything, to take even one of those files, it changes the case. But isn't that something that him is entitled to bring out in the arbitration? Yes, it would be. If we were in arbitration, this would clearly all be openly discussed. Third point, the contract, therefore, must prohibit what he did for them to have a claim against Uber. If it does prohibit him, there are other things that might also come into play. Conversion, misappropriation of, violation of a trade secret statute, etc. No. You've got it backwards. The contract must permit, in order for you to assert, not prohibit. If it permitted, those other claims wouldn't exist. I think we're saying the same thing, Judge.  then the common law and the statutes wouldn't be violated. If the contract doesn't permit it, then it would violate both the contract and other sources of law. But the point is, that makes the contract inescapably relevant and implicitly relied upon. If we were to ever say... I want to ask you a question. Let me answer. It's an important question. Please. It's not implicit. It is absolutely what they've done. Because, Your Honor, it's implicitly part of the case. They can't make it not part of the case. They chose to have a contract. It exists. And it's gamesmanship for them. What are they giving up? They're not giving up anything. If we stand up in court and say they took no measures to protect this information, they never had a contract, then they've said, well, then we'll stand up and say it. So they are litigating a case where we know we can't say that because we know they do have these contracts. And by the way, all their employee contracts have arbitration agreements. So they are getting the benefit of those contracts in this case. Believe me, we will not be able to stand up in court and say they didn't take measures, ladies and gentlemen of the jury. They didn't ask for arbitration. Of course we can't say that. So that means they're getting the benefit of the contract. That they exist. Not just that they exist, that they have extensive confidentiality provisions. They get the benefit of that because we can't stand up and make that argument. Because it's not true. It would be false, yeah. It would be a violation of the rules. That's correct. That gives them the benefit of the contract. Can we move on? We have the arguments and the issues. I hope we have. Thank you.